Patricia Ann ENFIELD,
et al., Plaintiffs,

v.

ATLANTIC RICHFIELD COMPANY,
et al., Defendants,

Marcy Lee HURD, and Gary C. Rhodes,
Co-Trustees of the Marcy Lee Hurd
Trust, Plaintiffs,

v.

ATLANTIC RICHFIELD COMPANY,
Defendant.

Nos. CIV-88-932-A, CIV-87-2032-A,
CIV-88-1427-A, CIV-88-1508-A, CIV-
88-1509-A, CIV-88-1525-A, CIV-88-
1612-A and CIV-89-637-A.

United States District Court,
W.D. Oklahoma.

Oct. 17, 1989.

Randall J. Wood, Monte E. Johnson, Robert N. Barnes, Patranell B. Dykeman,
Stack & Barnes, Oklahoma City, Okl., for plaintiffs.

A.P. Murrah, Jr., Cleta Deatherage Mitchell, Roy J. Davis, Murrah & Davis, Oklahoma City, Okl., J. Randall Miller, Moyers Martin Santee Imel & Tetrick, Tulsa, Okl., for defendants.

ORDER

ALLEY, District Judge.

The defendant Atlantic Richfield Company ("ARCO") has moved to strike certain portions of plaintiffs' amended complaints, on the grounds that the new allegations are an attempt to circumvent the Court's Order of August 25, 1989. For several reasons, ARCO's motion is denied.

Initially, ARCO has failed to distinguish between cost of litigation and cost of mitigation. ARCO's central complaint appears to be that plaintiffs want ARCO to pay for hiring experts to test, evaluate and make a clean-up plan for the pollution. ARCO believes that it has been absolved of paying any such cost by the August 25, 1989 Order which prevented discovery of well test results as work product. Plaintiffs respond that testing and evaluation are necessary prerequisites to a clean-up plan which will mitigate damages. As an alternative theory, the plaintiffs claim they have a right to abate a nuisance and to seek reimbursement from ARCO; and that ARCO has a statutory duty to clean up its pollution. Plaintiffs further contend that ARCO's motion to strike is untimely because the disputed claims have been made known to ARCO in other pleadings.

The Oklahoma Court of Appeals discussed costs of litigation v. costs of mitigation in *Tulsa Minicipal Airport Trust v. National Gypsum Co.*, 551 P.2d 304 (Okla.Ct.App.1976). The defendants had constructed a four-acre roof on an airplane hanger, and the roof subsequently developed numerous leaks. The defendants initially refused to respond to the plaintiff's requests to repair, and so the plaintiff hired his own attorney and roofing experts to develop a plan to repair the roof. After much negotiation, an agreement was

reached and a stipulation signed whereby the defendants repaired the roof. However, the plaintiff reserved for adjudication its rights to seek payment of costs of expert opinion, costs of the action, and attorneys fees. When the plaintiff sued, the defendants argued that these were unrecoverable costs of litigation, and that the claimed expenses were a "disguise" and a "semantic ploy" to avoid the American Rule.

In soundly rejecting the defendants' argument, the Court found that the plaintiff had indeed stated a cause of action to recover its costs of mitigation. "Such necessary *mitigation expenses* should not and cannot be compared to *litigation expenses* in the pursuit of a lawsuit. The former exists through no fault of the injured party, whether a lawsuit is filed or not, and have nothing to do with the services rendered for the preparation and trial of a lawsuit, as do the latter." *Tulsa Municipal*, 551 P.2d at 311 (Bacon, J. concurring) (emphasis in original). The court concluded that mitigation must be circumscribed by these factors:

(1) It must be in good faith;

(2) It must be executed with reasonable skill, prudence, and efficiency;

(3) It must be reasonably warranted by and proportioned to the injury and consequences to be averted;

(4) It must be undertaken in a reasonably justified belief that it will avoid or reduce the damage otherwise to be expected from wrongdoing.

*Tulsa Municipal*, 551 P.2d at 311.

The court further held that "the question of whether an injured party, acting in good faith, exercised reasonable care and diligence in doing what he did to mitigate damages under a given set of circumstances is a factual question, and in case of conflicting evidence, is to be resolved by a jury or a court sitting without one." *Tulsa Municipal*, 551 P.2d at 311.

Mitigation of damages, also called the avoidable consequence doctrine, has been recognized in other courts as well. *See Casey v. Nampa and Meridian Irrigation Dist.*, 85 Idaho 299, 379 P.2d 409 (1963)

(recognizing obligation of injured party to minimize damages, and that a party is entitled to recover costs reasonably incurred in minimizing damages or avoiding consequences of conduct of other party); *Albers v. County of Los Angeles*, 62 Cal.2d 250, 42 Cal.Rptr. 89, 398 P.2d 129 (1965) (injured party who makes successful effort to avoid or reduce damages may recover expenses necessarily incurred in so doing, even if effort proves unsuccessful); *see also Coury Bros. Ranches, Inc. v. Ellsworth*, 103 Ariz. 515, 446 P.2d 458 (1968).

■ We do find today that the plaintiffs have properly stated a claim for mitigation, although it is for the jury to decide whether the plaintiffs efforts at mitigation were reasonable. Assuming for purposes of this motion only that the plaintiffs' allegations are true, the pollution created by ARCO will continue to damage the land. To curtail further damage, plaintiffs have the right to institute a clean-up plan. Such a plan will require the assistance of experts to initially determine the exact nature and extent of pollution in each area.

■ As an alternate theory to mitigating their damages, the plaintiffs have a right to recover expenses of experts and a clean-up plan as damages flowing directly from the injury itself, whether plead in contract or tort. The plaintiffs also have the right to abate a nuisance on their land. Okla. Stat.Ann. tit. 50, §§ 1–17.

ARCO complains further of a paragraph in the amended complaints where the plaintiffs allege ARCO discriminated against them in favor of other land owners in and around the Garber field. These same allegations have been included in prior versions of the complaints, as well as the plaintiffs' Status Report of May 2, 1989. The plaintiffs' discovery into lands not owned by them has already been addressed and limited in this Court's Order of August 25, 1989. Insofar as these allegations go to a punitive damages claim, they will not be stricken, but neither does their inclusion alter the provision of the August 25, 1989 Order. The issue was moot when ARCO raised it again in this motion. The discrimi-

nation allegations have been made before and dealt with before. The Court sees no need to repeat the process other than to refer the parties to the August 25, 1989 Order.

The motion to strike by ARCO is denied.